# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID No. 1605008552 |
| | ) | |
| MALIK THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: April 25, 2019
Decided: July 16, 2019

## ORDER

This 16th day of July, 2019, upon consideration of Defendant, Malik Thomas' *pro se* Motion for Postconviction Relief (the "Motion"),[1] the Affidavits of Trial Counsel and Appellate Counsel,[2] the State's Response to the Motion,[3] Postconviction Counsel's Motion to Withdraw as Counsel,[4] and the record in this case, **IT APPEARS THAT:**

1. On July 5, 2016, a grand jury indicted Defendant on multiple charges. A jury trial commenced on February 28, 2017 and lasted two days. During the trial, the State read into the record a stipulation of fact – signed by the State, Trial Counsel, and Defendant – that Defendant was a person prohibited from possessing, owning,

---

[1] D.I. 49.
[2] *See* D.I. 73 (Trial Counsel Affidavit); *see also* D.I. 71 (Appellate Counsel Affidavit).
[3] D.I. 75.
[4] D.I. 59 (Appendix attached with pagination A1 to A286).

or controlling a firearm.[5] The State introduced DNA evidence and expert testimony to establish that the DNA found on a firearm – discovered in the vicinity of the crime scene – matched Defendant's DNA, and the likelihood of the result matching someone else was as low as 8.711 trillion.[6] The State also introduced a key found on Defendant for a vehicle – which had disregarded a stop sign; the police had pulled over, and subsequently had fled the police – and a nine-millimeter bullet in the pocket of the passenger in Defendant's vehicle.[7] The Defendant elected not to testify at trial, and the Court held a colloquy on whether Defendant had enough time to discuss with Trial Counsel his decision not to testify.[8] Defendant confirmed that he did have enough time to discuss his decision with Trial Counsel.

2. On March 2, 2017, a jury found Defendant guilty of Disregarding a Police Officer's Signal, Resisting Arrest, Criminal Impersonation, and Possession of a Firearm by a Person Prohibited ("PFBPP").[9] After the guilty verdict but prior to sentencing, Trial Counsel informed Defendant that she no longer represented him and that Appellate Counsel would represent him.[10]

3. On October 27, 2018, the Court sentenced Defendant to ten years at level

---

[5] D.I. 45, at 106-07.
[6] *Id.* at 98.
[7] *Id.* at 39-42, 54, 56, 70.
[8] D.I. 59, at A181 (citing Mar. 2, 2017 Trial Tr., at 5).
[9] Prior to sentencing, Defendant pled guilty to additional charges in two other cases. *See* D.I. 71, 75.
[10] D.I. 59, at A27 (the letter specified a different attorney at the firm but Appellate Counsel became the lead attorney).

5, with credit for twenty-four days and participation in a level 5 treatment program for PFBPP; two years at level 5 suspended for twelve months at level 3 for Disregarding a Police Officer's Signal (IN-16-09-1480); one year at level 5 suspended for one year at level 3 for Criminal Impersonation; and one year at level 5 suspended for twelve months at level 3 for Resisting Arrest.[11]

4. On November 27, 2017, Defendant, through Appellate Counsel, filed a Notice of Appeal to the Delaware Supreme Court.[12] On January 17, 2018, the Delaware Supreme Court issued a Scheduling Order.[13] On February 11, 2018, Appellate Counsel and Defendant spoke in person "about the benefits and risks of appealing [the] case."[14] The conversation included the possibility of a retrial and a new sentencing, which could differ from the sentence he had already received, and Defendant's decision to authorize a voluntary withdrawal of appeal.[15] On February 15, 2018, Defendant voluntarily dismissed his appeal.[16]

5. On May 3, 2018, Defendant sent a letter to the Delaware Supreme Court

---

[11] D.I. 43. At the sentencing, Defendant was also sentenced for charges not related to this Motion. The additional sentences Defendant received were five years at level 5 for Possession of a Firearm During the Commission of a Felony; fifteen years at level 5 suspended for eighteen months at level 3 for Tier I Possession; two years at level 5 suspended for one year at level 3 for Disregarding a Police Officer's Signal (IN-17-01-0732); and two years at level 5 suspended for one year at level 3 for Disregarding a Police Officer's Signal (IN-16-12-0801). *Id.*

[12] *See* D.I. 59, at A266-67.

[13] *Id.* at A275.

[14] Appellate Counsel memorialized Defendant's decision in a letter dated February 12, 2018. *See* D.I. 59, at A29.

[15] *Id.*

[16] *Id.* at A276.

3

stating, "[e]ven as [sic] Appellant does waive Direct Appeal, he does not waive Rule 61 proceedings."[17] On May 4, 2018, Defendant filed two motions *pro se*: Motion for Postconviction Relief and Motion for Appointment of Counsel.[18] On May 16, 2018, the Court granted the appointment of counsel, and appointed Postconviction Counsel.[19]

6. On November 15, 2018, after review of the record, Postconviction Counsel filed a Motion to Withdraw as Counsel stating that Defendant had no meritorious postconviction claims.[20] On December 6, 2018, Postconviction Counsel, on Defendant's behalf, submitted Defendant's handwritten arguments, which supplemented the Motion.[21] On February 25, 2019 and March 21, 2019, Defendant filed, *pro se*, additional supplements to the Motion.[22] The Court directed Trial Counsel and Appellate Counsel to submit affidavits responding to Defendant's claims of ineffective assistance of counsel and directed the State to file a brief responding to those claims.[23]

---

[17] *See* D.I. 59, at A277. The Delaware Supreme Court informed Defendant that it no longer had jurisdiction and suggested he contact Disciplinary Counsel if he had a complaint against an attorney. *Id.* at A279. Defendant also sent a letter to Appellate Counsel. *Id.* at A31-32. Appellate Counsel responded to Defendant's letter on May 8, 2018 telling Defendant he had followed Defendant's instructions to withdrawal the appeal. *Id.* at A33.

[18] D.I. 49, 50.

[19] D.I. 51, 54.

[20] D.I. 59. In a separate Order, the Court grants Postconviction Counsel's Motion to Withdraw as Counsel. *See* D.I. 77.

[21] D.I. 60.

[22] *See* D.I. 69.

[23] D.I. 70.

7. On April 8, 2019, Appellate Counsel submitted his affidavit.[24] On April 12, 2019, Trial Counsel submitted her affidavit.[25] The State filed its response on April 26, 2019.[26]

8. Because of Postconviction Counsel's Motion to Withdraw and his determination that Defendant has no meritorious claims, Defendant proceeded with his Motion *pro se*. The Motion is not procedurally barred.[27] Thus, the Court may consider the merits of Defendant's Motion.

9. Defendant asserts five claims of ineffective assistance of counsel: (1) Trial Counsel failed to investigate other DNA evidence, (2) Trial Counsel stipulated to certain facts at trial that prevented Defendant from "testifying and putting on a viable defense," (3) Trial Counsel had a conflict because she eventually became a prosecutor, (4) Trial Counsel improperly convinced Defendant not to appeal, and (5) Appellate Counsel never filed his direct appeal.[28]

10. To prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-prong test set forth in *Strickland v. Washington*:[29] (1) a defendant

---

[24] D.I. 71.

[25] D.I. 73.

[26] D.I. 75.

[27] D.I. 49. Superior Court Criminal Rule 61 governs motions for postconviction relief. *See* Super. Ct. Crim. Rule 61(i). Defendant filed his *pro se* motion within one year of the affirmance of the judgment of conviction by the Delaware Supreme Court and raised only ineffective assistance of counsel claims.

[28] *See* D.I. 60, 67, 69.

[29] 466 U.S. 668 (1984).

must show "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[30] The first prong creates a heavy burden for a defendant to establish ineffective assistance of counsel, because, "there is a strong presumption that counsel's representation was professionally reasonable."[31] To establish the second prong, the defendant must "make specific allegations of actual prejudice and substantiate them."[32] The Court need not approach "the inquiry in the same order or even address both components of the inquiry if the defendant makes an insufficient showing on one."[33] In other words, if the defendant does not make a sufficient showing of prejudice then the Court need not determine whether counsel's performance fell below an objective reasonable standard.[34]

11. In his first claim, Defendant argues that Trial Counsel was ineffective because she failed to investigate other DNA evidence.[35] Trial Counsel could have requested independent testing of the DNA evidence. However, failing to request

---

[30] *Strickland v. Washington*, 466 U.S. 668, 688, 695 (1984).

[31] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014) (internal citations omitted). The defendant must show that the counsel was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*

[32] *Hoskins*, 102 A.3d at 730 (internal citation omitted).

[33] *Strickland*, 466 U.S. at 697.

[34] *Id.* ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed.").

[35] *See* D.I. 60.

independent DNA evidence does not make Trial Counsel ineffective. *Strickland* and its progeny make clear that the failure to hire an independent forensics expert is not ineffective assistance of counsel unless the failure would have made a difference in the outcome of the case.[36] Defendant fails to assert whether independent DNA evidence would make a difference in the outcome of his case. In fact, as Postconviction Counsel set forth in his Motion to Withdraw as Counsel, there was a strong likelihood that a subsequent independent DNA analysis would yield results less favorable to Defendant.[37] Therefore, Defendant fails to establish actual prejudice.

12. In his second claim, Defendant argues that Trial Counsel was ineffective because she stipulated to certain facts at trial. In fact, it appears from the filings that Defendant is referencing the stipulation the State read into the record agreeing that Defendant is a PFBPP. According to Defendant, Trial Counsel's stipulation prevented him "from testifying and putting on a viable defense."[38] Defendant's claim is conclusory and does not specify how the stipulation rendered Trial Counsel ineffective. The record demonstrates that Defendant executed the stipulation of fact,

---

[36] *Harrington v. Richter*, 562 U.S. 86 (2011) (holding that failure to consult a blood evidence expert is not ineffective assistance of counsel because counsel is able to make reasonable decisions on whether further investigation is reasonable).

[37] D.I. 59, at 18.

[38] *See* D.I. 60. Defendant also asserted that Trial Counsel was "ineffective in many ways," but failed to provide any specifics. D.I. 49, 73. This conclusory assertion does not meet the burden set forth in *Strickland.*

7

and during a colloquy with the Court, he stated that he chooses not to testify. Hence, Defendant has failed to establish that Trial Counsel's stipulation of fact – which he approved – fell below an objective reasonable standard or prevented him from testifying or putting on a "viable defense."

13. In his third claim, Defendant argues that because Trial Counsel became employed as a Prosecutor after trial, she had a conflict of interest, and was therefore, ineffective as an attorney.[39] Apart from this unsubstantiated statement, Defendant has asserted no evidence that Trial Counsel had a conflict of interest or that her subsequent employment by the Attorney General's office adversely affected her representation of Defendant.[40] Defendant has, thus, failed to meet his burden under *Strickland*.[41]

14. In his fourth claim, Defendant alleges that Trial Counsel provided professionally deficient representation by convincing Defendant not to appeal.[42] This claim fails because Appellate Counsel, not Trial Counsel, represented Defendant after the trial and there is no evidence that Trial Counsel and Defendant discussed his appeal.[43]

---

[39] D.I. 60.
[40] *Strickland*, 466 U.S. at 693.
[41] *Id.*
[42] Trial Counsel did not represent Defendant during the appeals process. *See* D.I. 73. Therefore, Defendant's claim against Trial Counsel regarding an appeal must fail.
[43] *See* D.I. 71. In fact, after Defendant's trial but before sentencing, Appellant Counsel, not Trial Counsel, negotiated plea deals for Defendant on two other pending criminal cases, which led to a consolidated sentencing.

8

15. In his final claim, Defendant argues that Appellate Counsel was ineffective for not filing a direct appeal and for not explaining the appellate rights available to him.[44] Appellate Counsel, in his Affidavit, stated that he met with Defendant in person, advised Defendant of his post-trial rights, and the fact that if the appeal succeeded, Defendant would be subject to a new trial, and possibly a longer sentence.[45] Appellate Counsel further asserted that, after review of the record, he could not identify any appealable issues.[46] When provided with this information, Defendant stated to Appellate Counsel that he wanted to file a voluntary withdrawal of his appeal, and simply wanted to "do [his] time and move on."[47] Defendant did not specify how Appellate Counsel was ineffective by advising him to withdraw his appeal. Rather, Defendant conceded in his May 3, 2018 letter to the Delaware Supreme Court that he chose to withdraw the appeal. This claim also fails the *Strickland* test, because it is unsubstantiated and Defendant cannot establish prejudice.

---

[44] *See* D.I. 69. In *Ploof v. State*, 75 A.3d 811, 831 (Del. 2013), the Delaware Supreme Court extended the *Strickland* test to appellant counsel.
[45] D.I. 71.
[46] *Id.*; *see also* D.I. 67.
[47] D.I. 71.

**NOW THEREFORE**, after careful review of the record in this case, Defendant's Motion for Postconviction Relief is **DENIED**.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

Original to Prothonotary
cc:    Malik Thomas (SBI # 00603763)
       Zachary Rosen, Esq., DAG
       Matthew C. Buckworth, Esq.
       Colleen E. Durkin, Esq., DAG